NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERNARD A. KATZ, IN HIS CAPACITY AS DEBTOR REPRESENTATIVE AND LIQUIDATING TRUSTEE, OF THE ESTATE HUDSON HEALTHCARE, INC., <br><br>Plaintiff, <br><br>v. <br><br>HARVEY HOLZBERG, et al., <br><br>Defendants. | Civil Case No. 13-1726 (FSH) <br><br>**OPINION & ORDER** <br><br>Date: October 2, 2013 |

**HOCHBERG, District Judge:**

This matter comes before the Court upon several defendants' motions to dismiss [Dkt. Nos. 56, 60, 66]. For the reasons stated below, the Court grants the Former Authority Board Members' motions to dismiss Count IV of the Complaint.[1]

**I.     BACKGROUND**

Plaintiff, Bernard A. Katz, in his capacity as Debtor Representative and Liquidating Trustee of the estate of Hudson Healthcare, Inc. ("HHI" or the "Debtor"), brought this action against several parties for alleged injuries caused to HHI and its creditors. A short description of the background facts is necessary.

---

[1] The Court notes that this Order does not affect the liability of the Former Authority Board Members to the extent they are in this action in any other capacity.

This action concerns a hospital located in Hoboken, New Jersey ("the City"). In January 2005, Bon Secours, owner of St. Mary Hospital, sought to sell the hospital but received no offers. In January 2006, having accrued over $100 million in losses over 6 years, Bon Secours filed a Certificate of Need application with the State of New Jersey Department of Health and Senior Services seeking authorization to close the hospital.

In July 2006, the New Jersey Legislature adopted the New Jersey Municipal Hospital Authority Law, N.J.S.A. § 30:9-23.15, *et seq.* (the "MHAL"), which authorized a New Jersey municipality meeting certain criteria to create a hospital authority for the purpose of owning and operating a hospital. On August 9, 2006, the Hoboken Municipal Hospital Authority ("the Authority") was formed pursuant to the MHAL and an ordinance of the City. Pursuant to an Asset Transfer Agreement, Bon Secours transferred all of the assets comprising the hospital to the Authority in consideration of $1.

Upon the closing of the transaction, on or about February 1, 2007, the Authority changed the name of the hospital from St. Mary Hospital to Hoboken University Medical Center. The Authority became the owner of the hospital pursuant to N.J.S.A. § 30:9-23.18. The MHAL mandates that "[t]he authority shall exercise its powers and duties to manage and operate a hospital owned by it through a contract or contracts with a manager," but it makes clear that "the primary responsibility of operating the hospital shall remain that of the authority." N.J.S.A. § 30:9-23.20(a).

In accordance with the MHAL, the Authority caused HHI to be formed as a not-for-profit corporation and a support organization, as defined in Sections 501(c)(3) and 509(a)(3) of the Internal Revenue Code of 1986, to manage and operate the hospital on the Authority's behalf.

On August 1, 2011, HHI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On October 7, 2011, the Bankruptcy Court entered an order approving among other things, (i) a settlement agreement dated October 5, 2011, among the Debtor, the Authority, the City, the Hoboken Parking Utility, the Official Committee of Unsecured Creditors, and the Purchaser; and (ii) the sale and assignment to the Purchaser of the Debtor's rights and interests under certain contracts and leases necessary to operate the Hoboken University Medical Center. The sale of the Debtor's assets to the Purchaser closed on November 4, 2011, along with the sale of the hospital by the Authority to the Purchaser. On July 31, 2012, the Bankruptcy Court entered an order confirming the Debtor's Third Amended Joint Plan of Orderly Liquidation (the "Plan"). Bernard A. Katz, CPA was appointed as the Debtor Representative and Liquidating Trustee under the Plan. The "Effective Date" of the Plan as defined in Section 2.55 thereof occurred on September 12, 2012.

All of Katz's causes of action relate to the alleged mismanagement of HHI. Katz alleges that each layer of oversight failed to see the various "red flags" that indicated that HHI was insolvent, thus worsening the financial condition of HHI and its creditors.

Defendants Caulfield, Lawton, Corea, Kramer, Tomkins, and Nestor (6 of the 9 former members of the Authority Board) have moved to dismiss Count IV of the Plaintiff's complaint. Roberts and Holzberg also separately moved to dismiss Count IV, relying on Caulfield, Lawton, Corea, Kramer, Tomkins, and Nestor's brief.[2] Collectively these parties are referred to as "Former Authority Board Members."

---

[2] The only former member of the Authority that did not join the motion to dismiss Count IV is Richardson.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).

## III. DISCUSSION

Court IV of Katz's Complaint alleges that the Former Authority Board Members owed fiduciary duties to HHI and HHI's creditors by virtue of their authority and responsibility over the hospital's operations and finances. Katz argues that the Former Authority Board Members were, in effect, another HHI board. The Complaint alleges that the Former Authority Board Members breached this fiduciary duty by abdicating their authority and oversight of HHI thereby allowing HHI's insolvency to worsen.

The Former Authority Board Members seek to dismiss Count IV of the complaint based on five theories: (1) the Former Authority Board Members owed no fiduciary duties to HHI and its creditors; (2) the Authority is a public entity and the Former Authority Board Members are protected by the immunity and notice provisions of the New Jersey Tort Claims Act ("NJTCA"); (3) the management agreement between HHI and the Authority expressly precludes HHI from seeking recourse against the Authority's members; (4) the bankruptcy plan released the Authority, and the Former Authority Board Members do not have any liability independent from the Authority; and (5) New Jersey law provides that all acts, including any possible reserved powers, were the Authority's and not personally vested in the Former Authority Board Members.[3]

In opposition, Katz makes four arguments: (1) the directors of an insolvent corporation, and the directors of an entity that dominates and controls that insolvent corporation, owe a

---

[3] Because the Court finds that the Former Authority Board Members do not owe fiduciary duties to HHI's creditors, it does not reach defendants' other arguments.

fiduciary duty of care to the insolvent corporation's creditors;[4] (2) the NJTCA does not apply when a government official has not exercised any judgment at all, and Katz gave timely notice of the breach of fiduciary duty to the Authority within 90 days of HHI's bankruptcy; (3) the management agreement between HHI and the Authority only extended to HHI, and it only covered contractual claims (it did not extend to the non-party creditors or the breach of fiduciary duty claims); and (4) the bankruptcy plan explicitly excluded the Former Authority Board Members from the release found in the court-approved plan and the Former Authority Board Members can be liable personally, apart from the Authority's liability.

### *Fiduciary Duties to HHI's Creditors*

The Former Authority Board Members move to dismiss Court IV on the theory that they do not owe fiduciary duties to HHI's creditors. In opposition, Katz argues that (i) the directors of an insolvent corporation (here HHI) owe fiduciary duties of care and loyalty to the corporation's creditors; (ii) that an entity that dominates and controls a subordinate entity owes fiduciary duties to the stakeholders in that entity;[5] and (iii) it follows that the directors of a dominant entity owe fiduciary duties to the creditors of the insolvent subordinate entity.

Many of the corporate principles Katz describes are correct, but Katz's applications of those principles and his conclusions are not. For example, Katz is correct that the directors of an insolvent corporation can owe fiduciary duties to the corporation's creditors. *See*, *e.g.*, *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir.

---

[4] Although Count IV of Plaintiff's Complaint is not clear as to whether Plaintiff alleges that the Former Authority Board Members breached fiduciary duties to HHI, HHI's creditors, or both HHI and its creditors [Dkt. No. 1 at 52], Plaintiff's opposition to the motions to dismiss states that the Complaint only alleges that the Former Authority Board Members owed fiduciary duties to HHI's creditors [Dkt. No. 80 at 12].

[5] Katz argues that this occurs when the parent entity and the subordinate entity are a single economic unit such that the subordinate is merely a façade for the acts of the parent entity.

2002) ("Once a corporation becomes insolvent . . . the directors assume a fiduciary or 'quasi-trust' duty to the corporation's creditors. In this quasi-trust relationship, officers and directors cannot prefer one creditor over another, and they have a special duty not to prefer themselves." (internal citations and quotation marks omitted)). Katz is also correct that, as a general proposition, courts have held that liability for breach of fiduciary duty can, in some cases, be extended from the directors of a corporation to majority shareholders who effectively controlled the corporation. In addition, the Delaware Supreme Court has recognized that creditors can maintain indirect fiduciary duty claims against the directors of an insolvent corporation. *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007); *see also In re Tronox Inc.*, 450 B.R. 432, 438-39 (Bankr. S.D.N.Y. 2011).

Katz's theory of liability hinges on three assumptions: (i) that the body of law he relies upon applies in the public authority context (thus allowing Katz to reach the Authority); (ii) that, because a parent organization can have fiduciary duties to a subsidiary when that subsidiary is insolvent and an insolvent entity can have fiduciary duties to its creditors, the parent organization of an insolvent subsidiary has fiduciary duties to its subsidiary's creditors; and (iii) that, assuming one can reach a parent organization, the duties of the parent organization also apply to its directors (thus allowing Katz to reach the Former Authority Board Members).

The Former Authority Board Members argue that none of the law Katz relies upon can properly be applied to the relationship between the Authority and HHI for three reasons. First, the Authority and HHI are not in a parent-subsidiary relationship, rather, the Authority is a government body and HHI is a nonprofit corporation. Second, the Former Authority Board Members note that the Authority had to follow the MHAL—including its financial provisions—

7

as controlling New Jersey law. Finally, Katz fails to allege the elements of a valid veil-piercing theory.

Critically, Katz's theory fails on at least the first of his three assumptions. Katz does not provide a single case, from New Jersey or otherwise, supporting the application of corporate veil-piercing theory or parent-subsidiary law to the public authority context. Nor has Katz provided a single case where a municipal entity and its members were held responsible for the actions of a nonprofit corporation. However, other courts faced with similar issues have refused to apply corporate veil-piercing theory in the municipal context.

In *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 202-03 (6th Cir. 1992), plaintiffs sought to hold the city and county liable for the contractual obligations of a separately incorporated metropolitan waste authority under the theory that the city and county allegedly exercised "complete dominion and control" over the waste authority. The Sixth Circuit reversed the trial court's denial of the city and county's motion to dismiss, stating that "there is no Tennessee case law which gives a plaintiff the express right to pierce the corporate veil of a nonprofit corporation in the municipal context" and "[t]his court is reluctant to extend the corporate veil theory to the present set of facts absent more specific guidance from the Tennessee courts." *Id*. In addition, the Sixth Circuit found that the purposes behind the corporate veil piercing doctrine did not apply because the city was not an equity owner of the authority and there was no allegation of fraud or tortious wrongdoing. *Id*. at 203.

In *Newcrete Products v. City of Wilkes-Barre*, 37 A.3d 7 (Pa. Commw. Ct. 2012), the plaintiff sought to hold the city liable for the debts of a municipal redevelopment authority under a veil-piercing theory. Plaintiff alleged that the city operated the authority "with near absolute control as its alter ego" and even appointed the authority's members. *Id*. at 11. The

8

Pennsylvania appellate court held that "the doctrine of piercing the corporate veil is wholly inapplicable to the relationship between redevelopment authorities and municipalities." *Id*. at 13. The court found that the veil-piercing doctrine was "a means of assessing liability for the acts of a corporation against an *equity holder*" and that because a redevelopment authority is not authorized to sell ownership interests, the city could not be an equity interest holder in the authority. *Id*. at 13-14 (emphasis in original). This, the court found, made the application of corporate veil-piercing inapplicable.

Finally, in *Swan v. Bd. of Educ. of City of Chicago*, Civ. No. 13-3623, 2013 WL 3455860 (N.D. Ill. July 9, 2013), the plaintiffs sought to hold the city liable under the Americans with Disabilities Act for the closing of certain schools by the board of education under a veil-piercing theory. The plaintiffs alleged that the city appointed the board members and made decisions about the revenue available for education. The *Swan* Court noted that the plaintiffs did not cite any Illinois law (or other authority) that would allow plaintiffs "to pierce the corporate veil of a statutorily-created corporation to reach a municipality." *Id*. at *6. Critically, the school board was not authorized to sell ownership interest and the city was not capable of possessing an equity interest in the board.[6]

Although these cases do not apply New Jersey law, the Court finds their reasoning persuasive. In order to attribute fiduciary duties to the Former Authority Board Members, Katz has imported veil-piercing and other corporate concepts (*i.e.*, the duties corporations have to their insolvent wholly-owned subsidiaries and the duties directors of insolvent corporations have to

---

[6] The *Swan* Court also noted that plaintiffs did not allege that the board and the city were commingling funds, failing to maintain corporate formalities, or that the city was attempting to use the board to perpetrate a fraud upon plaintiffs, calling into question whether veil piercing would even apply if it were a typical corporate context. *Swan*, 2013 WL 3455860, at *6.

9

their creditors) into the relationship between a public entity and a nonprofit corporation. The veil-piercing doctrine is a means for transferring liability for the acts of a corporation to its equity holder. Because Katz admits that HHI was not a subsidiary of the Authority—instead noting the HHI was a private, nonprofit corporation while the Authority was a "body corporate and politic"—the doctrine does not apply.[7,8] *See*, *e.g.*, *Foster Wheeler Energy Corp.*, 970 F.2d at 203. Simply put, the Former Authority Board Members do not owe fiduciary duties to HHI or its creditors.

Katz's second and third assumptions are (a) that because a parent organization can have fiduciary duties to a subsidiary when that subsidiary is insolvent and an insolvent entity can have fiduciary duties to its creditors, that the parent organization of an insolvent subsidiary has fiduciary duties to its subsidiary's creditors, and (b) that, assuming one can reach a parent organization, the duties of the parent organization also apply to its directors. For these assumptions, Katz relies on *In re TOUSA, Inc.*, 437 B.R. 447, 460 (Bankr. S.D. Fla. 2010). In *TOUSA*, the action arose out of TOUSA, Inc.'s decision to borrow, and cause many of its subsidiaries to borrow, $500 million, as well as its decision to secure the debt by granting the

---

[7] The full statute reads: "The governing body of a city may create, by ordinance, a body corporate and politic to be known as the '....Municipal Hospital Authority,' inserting the name of such city. ***The authority shall constitute an agency and instrumentality of the city creating it***." N.J.S.A. § 30:9-23.18 (emphasis added).

[8] Moreover, veil piercing would not be adequately pled even if the Authority did have an equity stake in HHI. Under New Jersey law, veil piecing requires two elements: (1) the subsidiary was a mere instrumentality or alter ego of its owner and (2) adherence to the fiction of separate corporate existence would perpetuate a fraud, injustice, or otherwise circumvent the law. *See Canter v. Lakewood of Voorhees*, 420 N.J. Super. 508, 519, 22 A.3d 68, 75 (App. Div. 2011); *see also Pactiv Corp. v. Perk-Up, Inc.*, Civ. No. 08-5072, 2009 WL 2568105, *5 (D.N.J. Aug. 18, 2009). Katz has not alleged that the Former Authority Board Members perpetrated any fraud or injustice. Indeed, Katz alleged that the Former Authority Board Members ***did not exercise any discretion at all*** when arguing the NJTCA's substantive immunity provisions did not apply to the Former Authority Board Members. Veil piercing cannot apply for this additional independent reason.

10

lenders liens on substantially all of the subsidiaries' assets. The *TOUSA* Court, applying Delaware law, denied a motion to dismiss finding that the insolvent subsidiary owed a fiduciary duty to its creditors and that the directors and officers of the parent of a wholly owned insolvent subsidiary, already owing fiduciary duties to the insolvent subsidiary, also owed fiduciary duties to the creditors of the insolvent subsidiary. *Id*. at 458-60 ("Where a defendant owed fiduciary duties to an insolvent conveying subsidiary, that defendant was required to consider the interests of that subsidiary's creditors in attempting to maximize value for all stakeholders."). But even if the Court were to adopt the logic in *TOUSA*, there is no indication that this same logic should apply to the members of a municipal authority that does not own a controlling interest in a nonprofit corporation. *TOUSA* is inapposite.

## IV.     CONCLUSION & ORDER

For the reasons stated above;

**IT IS** on this 2nd day of October 2013,

**ORDERED** that defendants' motions to dismiss Count IV of the Complaint [Dkt. Nos. 56, 60, 66] are **GRANTED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to file a sur-reply [Dkt. No. 85] is **DENIED** as **MOOT**.

                                                      **IT IS SO ORDERED.**

                                                      **/s/ Faith S. Hochberg**_____
                                                      **Hon. Faith S. Hochberg, U.S.D.J.**